UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ERIC MCCALL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PROTECTIVE INSURANCE COMPANY, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-1184 (JEB)** |

**MEMORANDUM OPINION**

Plaintiff Eric McCall, a D.C. resident, sustained grievous bodily injuries from an automobile accident in 2021 while on the job in Virginia. He alleges in this suit that the three companies involved in administering his occupational-accident insurance policy — Defendants Protective Insurance Company, Independent Haulers Association, and SCI, LLC — defaulted on a range of duties, causing him delay in accessing covered medical care at great physical, economic, and emotional cost. He has thus brought claims for breach of contract, insurer bad faith, and fraudulent misrepresentation against Protective and negligence against IHA and SCI, as well as a separate count seeking declaratory relief. Protective has now moved to dismiss the counts against it on grounds of untimeliness and failure to state a claim, and IHA and SCI have jointly done the same.

Behind such a pedestrian description lie myriad nuanced choice-of-law questions, given that the underlying insurance policy was issued in Indiana. After walking through all the conflicts analysis, the Court ultimately concludes that Plaintiff has stated plausible claims for breach of contract against Protective and negligence against IHA and SCI. The Court will, on

the other hand, grant Protective's Motion with respect to Plaintiff's counts for insurer bad faith, fraudulent misrepresentation, and declaratory relief because the applicable law does not recognize them as standalone claims except in circumstances not plausibly present here.

## I. Background

The Court draws its facts from the Amended Complaint. See Naz v. Wright, 177 F.4th 1242, 1244 (D.C. Cir. 2026). It also relies, as it may at this stage, on documents "incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies." Thomas v. Pompeo, 438 F. Supp. 3d 35, 40 (D.D.C. 2020) (quotation marks and citation omitted).

### A. Factual Background

On November 24, 2021, McCall was involved in a motor-vehicle accident while working — presumably as a truck driver — in Virginia, where he lived at the time. See ECF No. 17 (Am. Compl.), ¶¶ 1–2, 12; see also id., ¶¶ 1, 22, 39 (never specifying Plaintiff's occupation but stating that IHA sponsored his insurance). He lost the functional use of his left hand and suffered serious brain, knee, ankle, and eye injuries, as well as other orthopedic and neurological harm. Id., ¶¶ 1–2, 54. At some point after the accident, he moved to Washington, D.C. Id., ¶ 17.

Plaintiff was covered by an occupational-accident insurance policy jointly administered by IHA and SCI and underwritten by Protective (sometimes mislabeled as "Progressive" in the pleadings). Id., ¶¶ 39, 74–76; see generally ECF No. 1-3 (Policy). IHA and SCI served as intermediaries between Plaintiff and Protective, handling enrollment, recordkeeping, premium payments, notice of loss, and policy administration generally. See Am. Compl., ¶¶ 45–46, 48; see also id., ¶ 77 (listing duties related to claim intake, documentation, and communication). For

example, SCI deducted premiums from Plaintiff's wages and served as Protective's chief "claims administrator." Id., ¶¶ 47, 75. IHA oversaw and helped administer the program. Id., ¶¶ 48, 76.

About nine days after the accident, on December 3, 2021, Plaintiff called and emailed SCI to initiate a claim. Id., ¶ 55. He also called Protective directly. Id., ¶ 63. Both paths led to dead ends. SCI assigned McCall a claim number but then allegedly failed to transmit his claim to Protective and withheld information from McCall about his claim and policy. Id., ¶ 57; see also id., ¶ 69 ("Plaintiff did not have access to the Policy."); id., ¶ 101 ("SCI breached [its] duties by . . . [f]ailing to provide Plaintiff with access to the Policy . . . ."). During Plaintiff's call with Protective, an intake agent told him "in substance" that his "only option for medical coverage" was Medicare, not his private insurance plan. Id., ¶ 63.

The agent, McCall now alleges, was wrong. Id., ¶ 66. He says that the policy's "plain language" covered medical expenses "incurred as a direct result of" a "sudden, unforeseen, and unexpected [occupational] event causing bodily injury," regardless of fault. Id., ¶¶ 40, 93; see ECF No. 18 (Opp.) at 10; but see Policy (apparently not containing quoted language verbatim). Those covered expenses allegedly included "reasonable and necessary medical treatment, hospitalization, surgery, and related care." Am. Compl., ¶ 40. And nothing in the plan conditioned benefits on Medicare status. Id., ¶ 42. McCall does not explain why he lacked access to the policy from the start.

The agent's words swayed McCall at the time. He stopped pursuing his claim, even as he kept paying premiums. Id., ¶¶ 70, 90. In his telling, he believed that "no private occupational accident coverage existed" because an "authorized claims representative" had said so "during formal claim intake . . . , at a time when [Protective] possessed superior knowledge of coverage unavailable to Plaintiff, and while Plaintiff did not have access to the Policy." Id., ¶¶ 69–70.

About two years later, McCall learned from a coworker that such coverage in fact existed. Id., ¶ 70. He "promptly" contacted SCI again to pursue benefits. Id. According to McCall, however, Defendants' conduct had already caused him to delay treatment, leading to out-of-pocket medical expenses, aggravation of his injuries, permanent physical and cognitive impairment, and other economic and emotional harm. See id., ¶ 72; see also id., ¶ 96 (listing similar set of harms); id., ¶ 137 (listing bases for damages).

While the Amended Complaint does not describe what happened next, Plaintiff states in his Opposition that an SCI representative "allegedly acknowledged that SCI had failed to report, transmit, or act on the notice" that McCall originally submitted. See Opp. at 1–2. In addition, Plaintiff at some point provided "Proof of Loss" related to his accident, as required by the policy. See Am. Compl., ¶ 110. Protective eventually "adjusted the claim," though it "paid only approximately $10,579.20, while full benefits" — in an unspecified amount — "remain unpaid." Opp. at 2.

Several other factual allegations are embedded elsewhere in the Amended Complaint. Because the timing and details are not entirely clear, the Court rehearses them here in bulk. As to Protective, McCall alleges not only that the company misrepresented his coverage and failed to process his claim but also that it (1) never provided him with a complete copy of his insurance policy upon request; (2) misclassified his claim as non-occupational and therefore not covered; (3) failed to issue payment or a formal written denial identifying an applicable exclusion from coverage; (4) demanded "duplicative and burdensome" documentation without identifying deficiencies in Plaintiff's prior submissions; (5) refused to correct "known misrepresentations once discovered"; and (6) engaged in a "pattern of delay and obstruction designed to discourage pursuit of benefits." Am. Compl., ¶ 91. McCall likewise alleges that SCI — in addition to not

processing his claim properly at the outset — did not provide him with access to his policy or correct "known misstatements of coverage." Id., ¶ 101. And he states that IHA failed to ensure proper claim processing, correct known claim mishandling, and provide policy documentation upon request. Id., ¶ 103; see also id., ¶ 82 (making similar allegations about all three companies acting in "coordinated" manner).

B. Procedural Background

McCall sued Defendants in D.C. Superior Court on February 16, 2026. See generally ECF No. 1-2 (Super. Ct. Compl.). IHA and SCI filed a Notice of Removal on April 7, pursuant to 28 U.S.C. § 1332. See ECF No. 1 (Removal Notice), ¶¶ 5–6 (alleging complete diversity of citizenship and amount in controversy above $75,000). They then moved to dismiss the Complaint on April 7. See ECF No. 2 (First IHA/SCI MTD). After some back and forth, Plaintiff filed an Amended Complaint that clarified Protective's identity but remained substantially the same. See ECF No. 13 (Mot. for Leave to File Am. Compl.) at 3 (describing changes).

That operative pleading offers a mix of claims sounding in contract and tort, including breach of contract, insurer bad faith, and fraudulent misrepresentation against Protective (Counts I–III) and negligence against IHA and SCI (Count IV). See Am. Compl., ¶¶ 107–33. McCall seeks declaratory relief, framed as a separate cause of action (Count V); an order compelling payment of all benefits due; and compensatory damages. Id., ¶¶ 135, 137–38. He also seeks punitive damages against Protective. Id., ¶ 138.

IHA and SCI have now filed a renewed Motion to Dismiss, see generally ECF No. 15 (IHA/SCI MTD), and Protective has similarly moved. See generally ECF No. 16 (Protective MTD).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In evaluating a 12(b)(6) motion, a court must treat "well-pleaded factual allegations as true" and draw "all reasonable inferences" in the plaintiff's favor. Animal Legal Def. Fund, Inc. v. Vilsack, 111 F.4th 1219, 1223 (D.C. Cir. 2024) (citation omitted); see also Iqbal, 556 U.S. at 678. But the court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Finally, where a defendant's 12(b)(6) motion raises a statute of limitations as a basis for dismissal, the case "cannot be dismissed [on that ground] unless it appears beyond doubt that the plaintiff can prove no state of facts in support of his claim that would entitle him to relief." Jones v. Rogers Mem'l Hosp., 442 F.2d 773, 775 (D.C. Cir. 1971). That is a high bar, particularly given that "statute of limitations issues often depend on contested questions of fact." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996). A complaint may be dismissed under Rule 12(b)(6) as "conclusively time-barred" only if "a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Momenian v. Davidson, 878 F.3d 381, 387 (D.C. Cir. 2017) (quotation marks and citation omitted).

## III. Analysis

As a preliminary matter, Indiana and D.C. laws loom large in the briefing. Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), and its progeny, a federal court sitting in diversity jurisdiction "must apply state law to the substantive issues before it," including statutes of limitations. A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995) (citing Erie and Guar. Tr. Co. of N.Y. v. York, 326 U.S. 99 (1945)). To determine which state's law applies, it must look to the choice-of-law rules of the state in which it sits — here, the District's. Petra, 62 F.3d at 1458; see also id. (confirming that same principles apply even though District is not a state).

Plaintiff argues that Indiana law governs the entire suit based on the terms of his insurance policy, see Am. Compl., ¶¶ 27–28, which was "issued and delivered in the State of Indiana and is governed by the laws of Indiana." Policy at ECF p. 27. He nonetheless relies on caselaw from both jurisdictions to argue that his claims should not be dismissed as time-barred. See Opp. at 5–9. On the other side, Protective often alternates between Indiana and D.C. authorities without providing arguments for when or why a particular jurisdiction's law should apply. See, e.g., Protective MTD at 5–7. IHA and SCI, meanwhile, contend that D.C. law governs Plaintiff's negligence claim and the corresponding statute of limitations under Erie and the applicable D.C. choice-of-law rules. See IHA/SCI MTD at 4, 7–8.

To deal with this fine kettle of fish, the Court addresses choice-of-law issues only as needed. It first considers whether Plaintiff's claims are time-barred "beyond doubt." Jones, 442 F.2d at 775. Finding that they are not, it moves to the merits.

A. Timeliness

According to Defendants, the limitations period for Plaintiff's claims is three years, whether under the insurance policy or D.C. law, rendering his suit too late. See Protective MTD at 4–5, 7–8; IHA/SCI MTD at 4–5; see also Policy at ECF p. 24 ("No lawsuit [to recover on this policy] may be brought after three (3) years from the time written Proof of Loss is required to be given by this policy.") (formatting altered). McCall nowhere disputes that number, instead arguing that he did not miss the deadline because his claims accrued later than Defendants suppose and, in any event, equitable principles justify an exception from strict application of the limitations period. See Am. Compl., ¶¶ 29–34; Opp. at 5–10. The Court looks separately at the claims brought against Protective and IHA/SCI because it finds different bases to allow certain counts to proceed.

*1. Claims Against Protective*

As it is unclear whether Plaintiff is making two separate arguments related to claim accrual against Protective, compare Opp. at 4–5 (possibly relating to accrual under insurance contract), with id. at 9–10 (relating to accrual under D.C. law), the Court begins and ends with his argument for equitable estoppel, which would apply regardless. On that front, a conflict-of-laws analysis is "unnecessary" because no relevant conflict exists between Indiana and D.C. laws, as shown below. Young Women's Christian Ass'n of the Nat'l Cap. Area, Inc. v. Allstate Ins. Co. of Canada, 275 F.3d 1145, 1150 (D.C. Cir. 2002).

Plaintiff principally contends that "[a]ny statute of limitations or contractual suit-limitation is tolled by Progressive's [*sic*] active and intentional fraudulent concealment of the existence and availability of coverage," Am. Compl., ¶ 29, and that it should be "equitably

estopped" from asserting a timeliness defense. Id., ¶ 33. He later frames substantially the same argument in terms of "waiver," "prevention," and "lulling," too. See Opp. at 3, 5–6, 8.

Equitable estoppel is a "flexible doctrine" that "prevents one party from misleading another to the other party's detriment or to the misleading party's own benefit." 28 Am. Jur. 2d Estoppel and Waiver § 1 (2026). Under both Indiana and D.C. laws, the party seeking estoppel must show that he lacked knowledge or the means to acquire knowledge of the relevant facts; that he relied on the conduct of the party being estopped; and that he acted accordingly in a way that changed his position for the worse. Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n, 819 N.E.2d 55, 67 (Ind. 2004); see Cassidy v. Owen, 533 A.2d 253, 255 (D.C. 1987) (additionally requiring that estopped party make false representation or conceal material fact with actual or constructive knowledge of truth and with intention that other party rely on misrepresentation). Generally, estoppel is appropriate in the statute-of-limitations context only where the defendant has acted affirmatively to delay the plaintiff from filing suit. See Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd., 134 N.E.3d 370, 383 (Ind. 2019) (stating that party's conduct "must be of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder") (citation omitted); Onyeneho v. Allstate Ins. Co., 80 A.3d 641, 647 (D.C. 2013) ("Equitable estoppel, sometimes called fraudulent concealment, only comes into play if the defendant takes active steps to prevent the plaintiff from suing in time . . . .") (cleaned up).

Here, Plaintiff has presented facts sufficient to warrant equitable estoppel, whether the relevant limitations period is established by the contract (and thus governed by Indiana law) or set by D.C. law. Consistent with the elements of equitable estoppel in both jurisdictions, he has alleged that (1) Protective, through its agent, affirmatively misrepresented his insurance coverage

by telling him that his only option was Medicare, see Am. Compl., ¶¶ 4, 31; (2) Protective intended that he rely on that misrepresentation, id., ¶¶ 29, 68; (3) it knew or should have known that McCall's insurance covered his injuries, id., ¶ 67; (4) Plaintiff relied on this misrepresentation, id., ¶ 69; and (5) he therefore delayed pursuing his claim and filing suit, to his detriment. Id., ¶¶ 70, 72. Critically, McCall also alleges that (6) he lacked knowledge of the truth or the means to acquire it because he did not have access to his insurance policy and Defendants refused to provide it upon request. Id., ¶¶ 69, 101, 104, 128; Opp. at 15, 19, 22, 23.

To be sure, Plaintiff's case for equitable estoppel is close. Several points of fact and law appear to weigh against his claim, but they are ultimately not enough to justify dismissal.

First, according to the D.C. Court of Appeals, the "general rule" in the insurance context is that a company "is not estopped to assert [a contractual] limitations period as a bar to a claim[] unless the company has conceded liability and some discussion of a settlement offer has occurred," Bailey v. Greenberg, 516 A.2d 934, 938–39 (D.C. 1986) (emphasis added), which Plaintiff does not allege occurred during his initial phone call with Protective. But that "general rule" rests on caselaw from other jurisdictions, id., and was not part of the holding in Bailey, since the company in that case allegedly told the claimant that her claim would be paid. Id. at 940. Bailey's *dicta* is insufficient evidence that that the D.C. Court of Appeals — much less the Indiana Supreme Court — would apply such a rule in a case where, as here, a plaintiff has otherwise pled facts sufficient to support equitable estoppel and was not issued a formal claim denial when the misrepresentation allegedly occurred. See Am. Compl., ¶¶ 82, 91.

Second, as Protective notes, see Protective MTD at 6–7, "an insured cannot estop the insurer from asserting a policy's limitations period" when "the inducement by the insurance company not to file suit ended well before the limitations period expired." 1426 Wisconsin

L.L.C. v. Travelers Indem. Co. of Am., 110 F. Supp. 3d 259, 263 (D.D.C. 2015) (quoting Bailey, 516 A.2d at 939). Judge John Bates of our district in 1426 Wisconsin deemed one year "ample time" to file suit in such a scenario — approximately the amount of time that passed between when McCall learned he had coverage and the 2024 deadlines that Protective invokes. Id. at 263–64; see Protective MTD at 6–7. Yet Judge Bates did so at the summary-judgment stage, 1426 Wisconsin, 110 F. Supp. 3d at 261, based in part on facts about subsequent dealings between the parties. Id. at 270. Here, the details of what transpired after Plaintiff learned of his coverage are fuzzy. See supra Section I.A. Dismissing the suit now because Plaintiff might have had "ample time" to file would therefore be premature, particularly in light of the rule that a complaint may be dismissed as "conclusively time-barred" only if no other facts consistent with the challenged pleading could "possibly cure" the deficiency. Momenian, 878 F.3d at 387 (citation omitted).

Third, Protective's appeal to the "failure to discover damages" rule is inapt: the Indiana cases it cites deal with discovery of property damage that itself would have been compensable under the insurance contract if found sooner. See Protective MTD at 5–6 (citing United Techs. Auto. Sys., Inc. v. Affiliated FM Ins. Co., 725 N.E.2d 871 (Ind. Ct. App. 2000), and New Welton Homes v. Eckman, 830 N.E.2d 32 (Ind. 2005)). In those cases, the plaintiffs discovered physical damage to their property after the relevant contractual limitations period had expired, including environmental contamination and structural flaws in a home's drainage system, respectively. United Techs., 725 N.E.2d at 873; New Welton Homes, 830 N.E.2d at 33–34. By contrast, this case involves Plaintiff's discovery of the fact of coverage after Protective's alleged "misdirection." Opp. at 7. So the Indiana rule that failure to discover damages does not justify

tolling an insurance contract's limitations period — to the extent it applies at all here — is not necessarily dispositive.

While equitable estoppel is an "extraordinary remedy," 28 Am. Jur. 2d, supra, § 3, Plaintiff's estoppel argument does not lie outside the realm of plausibility. Given the fact-intensive nature of the inquiry and the high threshold for deeming a claim conclusively time-barred at this stage, dismissal of the claims against Protective on timeliness grounds is not appropriate. Cf. Suarez v. Compass Coffee LLC, 2025 WL 3062798, at *11–12 (D.D.C. Nov. 3, 2025) (citation omitted) (citing "many contested questions of fact" in declining to dismiss claim based on statute of limitations where parties disputed issues related to accrual and equitable estoppel).

*2. Claims Against IHA and SCI*

Plaintiff similarly argues that his claims against IHA and SCI should not be dismissed as time-barred because (1) they plausibly accrued when he learned of his coverage from a coworker around December 2023, making them timely, and (2) even if they were *prima facie* untimely, equitable tolling and estoppel are appropriate. See Opp. at 17–18; see also East v. Graphic Arts Indus. Joint Pension Tr., 718 A.2d 153, 160 n.21 (D.C. 1998) (distinguishing between related doctrines known as "the discovery rule, equitable estoppel, and equitable tolling"). Because the Court agrees with McCall on the first point, it need not address the second. In addition, no relevant conflict of laws exists with respect to accrual, as the cases below show, so the Court need not conduct a full conflicts analysis. See Young Women's Christian Ass'n, 275 F.3d at 1150.

A cause of action generally accrues — and the applicable limitations period begins to run — when the injury occurs. Radbod v. Moghim, 269 A.3d 1035, 1044 (D.C. 2022); see also Keep

v. Noble Cnty. Dep't of Pub. Welfare, 696 N.E.2d 422, 425 (Ind. Ct. App. 1998) ("Generally, a cause of action accrues when a wrongfully inflicted injury causes damage."). Under the "discovery rule," however, a cause of action can accrue later if certain information was "obscure" when the injury happened; in that scenario, the cause of action accrues when "one must know or by the exercise of reasonable diligence should know" of the injury, "its cause in fact," and "some evidence of wrongdoing." Morton v. Nat'l Med. Enters., Inc., 725 A.2d 462, 468 (D.C. 1999) (citation and emphasis omitted); see also Pflanz v. Foster, 888 N.E.2d 756, 759 (Ind. 2008) ("Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when a claimant knows or in exercise of ordinary diligence should have known of the injury."); cf. supra Section II.A.1 (distinguishing Indiana caselaw cabining discovery rule).

What counts as sufficient diligence is a "highly factual analysis" that requires consideration of "all relevant circumstances," including the defendant's conduct, "the reasonableness of the plaintiff's reliance," and the plaintiff's "confidence" in the defendant. Radbod, 269 A.3d at 1044 (citation omitted); see also Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992) (describing discovery rule's applicability as "a question of fact for the factfinder to answer"). Sometimes, the "relevant facts may be such that it may be reasonable to conduct no investigation at all." Radbod, 269 A.3d at 1045 (citation omitted).

Here, IHA and SCI insist that Plaintiff's negligence claim accrued more than three years before he filed this suit, making it untimely under the District's default three-year statute of limitations. See IHA/SCI MTD at 5; D.C. Code § 12-301. Specifically, they argue that Plaintiff should have known the relevant information on December 3, 2021, when the Protective representative told him that Medicare was his only option and McCall therefore learned that

"there was no claim being adjusted." IHA/SCI MTD at 5. Plaintiff counters that he "did not discover the existence" of his coverage until about two years later, see Opp. at 17, and maintains that he "acted reasonably and with due diligence in relying on Defendants' misrepresentations and omissions[,] and in later discovering coverage." Am. Compl., ¶ 30.

While McCall does not allege many facts demonstrating diligent investigation, he does not need to do so at this stage. The facts that he does allege suggest that it might have been reasonable for him not to investigate the alleged omissions for some time because he believed — based on Protective's statements — that he had no valid claim for IHA and SCI to act (or sit) on. Rather than bolstering IHA and SCI's accrual argument, the phone call with Protective on December 3, 2021, undercuts it.

Of course, additional facts could show that Plaintiff knew or should have known that IHA and SCI owed him continuing duties or that his reliance on Protective's statements was unreasonable. Such a showing might be enough to prove that his negligence claims accrued on December 3, 2021, as IHA and SCI contend. But none of those conclusions flows inexorably from the facts that McCall alleges, and the Court cannot dismiss a claim as time-barred unless "it appears beyond doubt that the plaintiff can prove no state of facts in support of his claim that would entitle him to relief." Jones, 442 F.2d at 775; see also E.M. v. Shady Grove Reprod. Sci. Ctr., P.C., 2025 WL 947515, at *6 (D.D.C. Mar. 28, 2025), opinion clarified, 2025 WL 1707695 (D.D.C. June 18, 2025) (not dismissing count as time-barred where there was "factual dispute regarding when the tort accrued"). Here, that demanding standard for dismissal is not met: Plaintiff plausibly alleges an accrual date that would render his negligence claims timely, and so the Court will not dismiss that count as conclusively time-barred.

B. Merits

The Court now turns to the merits. It preliminarily notes that Protective does not argue that Plaintiff's breach-of-contract claim (Count I) should be dismissed on grounds other than timeliness, compare Protective MTD at 4–8, with id. at 8–11, so the Court will allow it to proceed without further analysis. As for the other counts, Defendants maintain that McCall has failed to state a claim for each under D.C. law. See Protective MTD at 8–11; IHA/SCI MTD at 6–10. He responds that his claims all arise under Indiana law, see Am. Compl., ¶ 28, while maintaining that he has stated claims under D.C. and Indiana law alike. See, e.g., Opp. 13–15, 18–19. The Court must thus analyze choice-of-law issues claim by claim. See Lopez v. Council on Am.-Islamic Rels. Action Network, Inc., 741 F. Supp. 2d 222, 235 (D.D.C. 2010) ("Under District of Columbia conflict of laws principles, the Court must conduct the choice of law analysis for each claim being adjudicated.").

*1. Count II: Insurer Bad Faith Against Protective*

To make out his claim of "insurer bad faith" — which he styles as a tort — Plaintiff alleges that Protective owed him a "duty of good faith in claim handling" and that it knowingly breached that duty by (1) concealing coverage, (2) misdirecting him to Medicare, (3) failing to initiate a claim and conduct a reasonable investigation, (4) irrationally delaying payment without issuing a written denial identifying an exclusion, (5) acting with "dishonest purpose and conscious wrongdoing," and (6) "[p]rioritizing its financial interests over Plaintiff's rights." Am. Compl., ¶¶ 115–16. He states that Protective's conduct was "willful, malicious, and in reckless disregard of [his] rights," id., ¶ 117, and accordingly seeks punitive damages. Id., ¶ 119.

a. Choice of Law

Unfortunately for the reader, there is a genuine conflict between D.C. and Indiana laws on insurer bad faith. In Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080 (D.C. 2008), the D.C. Court of Appeals declined to recognize a tort of insurer bad faith because every contract contains an implied covenant of good faith under D.C. law, meaning that damages for insurer bad faith can generally be recovered as part of an action for breach of contract. Id. at 1087–88. By contrast, in Erie Insurance Co. v. Hickman *ex rel.* Smith, 622 N.E.2d 515 (Ind. 1993), the Indiana Supreme Court reaffirmed "the existence of a duty that an insurer deal in good faith with its insured" and recognized "a cause of action in tort for the breach of that duty." Id. at 517. The Court must therefore undertake a choice-of-law analysis.

Not surprisingly, the parties offer opposing positions. Protective assumes without argument that D.C. law governs Plaintiff's bad-faith claim and relies on D.C. precedent to argue that this count is a contract claim masquerading as a tort. See ECF No. 21 (Protective Reply) at 2 ("Plaintiff allege[s] breach of contract claims disguised as a tort.") Plaintiff meanwhile insists that Indiana law governs all his claims, even as he contends that they are entirely independent from the contract. See, e.g., Opp at 13–15, 22. The threshold question, then, is not just whose choice-of-law rules apply, but what kind of choice-of-law rules apply — those applicable to contract claims, see, e.g., Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971), or those associated with tort claims. See, e.g., id., § 145.

The "whose rules" question is easy. "A federal court sitting in diversity must apply the choice-of-law rules of the forum state — here, the District of Columbia." In re APA Assessment Fee Litig., 766 F.3d 39, 51 (D.C. Cir. 2014). The "what rules" question is harder. Because the D.C. Court of Appeals has not squarely addressed whether a bad-faith claim pleaded as a tort

independent from any contract is subject to tort- or contract-related choice-of-law rules, this Court must "predict" how that court would rule. Edge Inv., LLC v. Dist. of Columbia, 927 F.3d 549, 559 n.10 (D.C. Cir. 2019) (quoting Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991)).

In this Court's view, the D.C. Court of Appeals would likely treat Plaintiff's bad-faith claim as a tort claim for choice-of-law purposes (consistent with the pleadings) and apply its general governmental-interests analysis rather than a choice-of-law test tailored to contract claims. Although the D.C. Court of Appeals did not grapple with this issue in Choharis, its treatment of the bad-faith claim there is instructive. After determining that insurer bad faith was generally compensable under contract principles and thus not cognizable as an independent tort, see 961 A.2d at 1087, the court did not take it upon itself to reconstrue the plaintiff's claim as a permissible breach-of-contract claim; instead, it affirmed the lower court's dismissal of the bad-faith claim. See id. at 1083 (affirming on all issues); id. at 1086 (noting that trial court dismissed bad-faith claim as matter of law); id. at 1088 ("The trial court here correctly dismissed the count based on a distinct tort of bad faith."). If the court took the plaintiff's tort framing at face value in Choharis when considering whether to dismiss his bad-faith claim, it would likely follow the same straightforward approach when deciding what choice-of-law rules to apply here.

To be sure, some courts have taken a different tack, most notably in Maryland. The Choharis court cast Maryland law as persuasive authority on insurer bad faith, see id. at 1088 (quoting Fourth Circuit's gloss on Maryland law), and federal courts in Maryland have applied contract-related choice-of-law principles to insurer-bad-faith claims on at least two occasions. See Cecilia Schwaber Trust Two v. Hartford Accident & Indemnity Co., 437 F. Supp. 2d 485, 488–89 (D. Md. 2006) (applying *lex loci contractus* rule to insurer-bad-faith claim where no

such tort existed); see also E. Stainless Corp. v. Am. Prot. Ins. Co., 829 F. Supp. 797, 798–99, 801 (D. Md. 1993) (taking similar approach before state high court had ruled on whether bad-faith tort existed). That said, the federal district court in Cecilia Schwaber did not confront a situation where, as here, applying the law selected in the contract would contravene the forum state's "considered choice" to bar tort claims of insurer bad faith. See 437 F. Supp. 2d at 489. On the contrary, one reason that the court treated the bad-faith claim as contractual for choice-of-law purposes was that doing otherwise would allow the claim to proceed, which would "run[ ] counter to Maryland public policy." Id. While that logic might seem objectionably results oriented, it at least suggests that the Maryland cases are distinguishable and do not defeat this Court's prediction that the D.C. Court of Appeals here would not apply choice-of-law rules made for contract claims.

The Court will accordingly apply the District's general method for analyzing choice-of-law questions in tort cases, known as "modified governmental interests analysis." Washkoviak v. Student Loan Mktg. Ass'n, 900 A.2d 168, 180 (D.C. 2006) (quotation marks and citation omitted); cf. Vaughan v. Nationwide Mut. Ins. Co., 702 A.2d 198, 202–03 (D.C. 1997) (treating interests-based analysis as "general" approach also relevant to contract claims in insurance context). To "identify the jurisdiction with the most significant relationship to the dispute," D.C. courts "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." Washkoviak, 900 A.2d at 180 (quotation marks and citation omitted); see also In re APA Assessment Fee Litig., 766 F.3d at 51 (employing Washkoviak "as our guide").

As relevant here, the rule announced in Choharis rests on the D.C. court's determination that contract principles should chiefly govern insurer-insured relationships and that any further

regulation of those relationships is "most appropriately" left to the legislature. See 961 A.2d at 1087; see also Fireman's Fund Ins. Co. v. CTIA, 480 F. Supp. 2d 7, 10 (D.D.C. 2007) (noting that D.C. Code lacks general cause of action for insurer bad faith). The Indiana Supreme Court's different conclusion in Hickman hinges primarily on the "special relationship" between insurer and insured, the harm that results from insurer bad faith, and the notion that "it is in society's interest that there be fair play between insurer and insured." 622 N.E.2d at 518–19.

Neither set of policies clearly trumps the other. The District has a strong interest in holding insurers doing business there accountable to their contract terms — and those terms alone — absent a truly independent basis for tort recovery or a decision by the legislature to regulate the insurance industry differently. Cf. In re APA Assessment Fee Litig., 766 F.3d at 53 (noting, based on D.C. law, that rules of "non-liability" are owed "the same consideration in the choice-of-law process" as rules that impose liability). At the same time, Indiana has a strong interest in ensuring that its corporate citizens and other companies executing contracts in the state deal fairly with consumers. The Court thus "cannot say" whether the policies underlying either jurisdiction's rule would be "more advanced than the policies of the other by the application of its law" to this case. Washkoviak, 900 A.2d at 180.

Where no government's interest prevails, D.C. courts also consider (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship is centered." Id. at 180–81 (citation omitted); see also Restatement (Second) of Conflict of Laws § 145 (enumerating same factors). Again, those factors do not point decisively in either direction. Although Plaintiff alleges that Defendants "caused tortious injury in the District of Columbia," including "bad-faith claim delay," he says

that the company did so "by acts and omissions outside the District." Am. Compl., ¶ 16 (emphasis added). And while McCall is domiciled in the District, see id., ¶ 35, Protective is incorporated and has its principal place of business in Indiana. See Removal Notice, ¶ 6. Finally, the parties' relationship is not squarely centered in one jurisdiction or the other: the insurance policy was "delivered" in Indiana, see Policy at ECF pp. 2, 27, but Plaintiff alleges that Defendants "transacted business in the District of Columbia by administering, adjusting, supervising, and communicating regarding Plaintiff's insurance claim while Plaintiff resided in the District." Am. Compl., ¶ 15. In addition, the "insured risk" likely lay in Virginia, given that McCall lived and worked there before he moved to the District. Vaughan, 702 A.2d at 202 (citation omitted); Am. Compl., ¶¶ 12, 52.

So must we flip a coin? Fortunately, there is a rule for this situation. Where the Court "cannot determine from the pleadings which jurisdiction has a greater interest in the controversy" — particularly given that neither Plaintiff nor Protective has briefed the choice-of-law issues fully — it "must apply the law of the forum state, which in this case is the District of Columbia." Malvitz v. Fincantieri Marine Grp., LLC, 2025 WL 1663077, at *6 (D.D.C. June 12, 2025) (quoting Washkoviak, 900 A.2d at 182); see also Wu v. Stomber, 750 F.3d 944, 949 (D.C. Cir. 2014) ("D.C. choice-of-law rules require, in a case where the factors do not point to a clear answer, that we apply D.C. tort law, the law of the forum state."). D.C. law it is.

b. Application of D.C. Law

As stated above, the choice of D.C. law sinks McCall's bad-faith count because such a tort does not exist here. Choharis, 961 A.2d at 1087–88. He tries to distinguish this case from Choharis by framing the Protective agent's statements as misrepresentations that "extinguishe[d]" the claim "before the contractual process" began, as distinct from

misrepresentations made during interactions contemplated by the contract. See Opp. at 13. While it is true that Choharis involved "a dispute over how to perform a contractual obligation," id. (emphasis added) — including, for example, the insurer's duty to provide the plaintiff with short-term housing while his home was uninhabitable, see 961 A.2d at 1084 — its holding is not so narrow. See id. at 1088 ("[W]e reject the broad claim of bad faith as a viable tort."). In refusing to recognize a tort of bad faith, the court reasoned that "bad faith conduct can be compensated within [contract] principles" and that "no compelling basis" existed for "intertwining" contract disputes with "considerations peculiar to tort." Id. at 1087.

The same logic applies here. Plaintiff alleges in his Amended Complaint that the Protective agent who directed him to Medicare "effectively deni[ed] the existence of applicable private coverage," Am. Compl., ¶ 4 — in other words, Protective initially refused to process a claim that it was contractually obligated to pay. That allegation is well within the ambit of the contractual relationship and contract law.

Further, the fact that Protective's alleged bad faith might have caused McCall harm beyond nonpayment of benefits does not change the outcome. In Choharis, the plaintiff sought additional damages resulting from insurer misrepresentations and delay, including the costs of living in a hotel and punitive damages. See 961 A.2d at 1089–90. He did so under the headings of fraud, negligent misrepresentation, and breach of contract, but the court's reasoning is equally applicable to bad-faith claims like McCall's. In ruling against the plaintiff, the court explained that his hotel costs "would fall within the realm of recoverable contract damages" and that punitive damages were not available because the relevant actions "cannot be characterized as ones that merge with and assume the character of a willful tort." Id. at 1090 (cleaned up).

While the harms McCall alleges here are significant — "economic loss, delayed medical treatment, aggravation of physical injury, and emotional distress," Am. Compl., ¶ 18 — they are "directly related to" Protective's contractual obligation to pay valid claims and are therefore "potentially compensable under contract principles." Choharis, 961 A.2d at 1090. Plaintiff likewise cannot recover punitive damages because bad faith alone does not "merge with and assume the character of a willful tort," as the Choharis court made abundantly clear. Id.; see id. at 1087–88; see also Sere v. Grp. Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982) (stating that "punitive damages will not lie" for mere breach of contract "even if it is proved that the breach was willful, wanton, or malicious").

To the extent Plaintiff wishes to amend his breach-of-contract count to account for damages beyond "benefits owed," Am. Compl., ¶ 111, he must file a written motion and attach "the proposed pleading as amended." United States *ex rel.* Adams v. Dell Computer Corp., 496 F. Supp. 3d 91, 102 (D.D.C. 2020) (quoting Local Civ. Rule 15.1); see also Belizan v. Hershon, 434 F.3d 579, 582 (D.C. Cir. 2006). His "bare request in [his] opposition — without any indication of the particular grounds on which amendment is sought — does not constitute a motion within the contemplation of Rule 15(a)." U.S. *ex rel.* Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1259 (D.C. Cir. 2004) (citation omitted); see Opp. at 22 (requesting leave to amend under Rule 15(a)(2) if Court finds pleading deficiency).

*2. Count III: Fraudulent Misrepresentation Against Protective*

Plaintiff also brings a claim of fraudulent misrepresentation against Protective on the ground that Defendant, through its agent, "misrepresented that Plaintiff's only coverage option was Medicare." Am. Compl., ¶ 121; see Sibley v. St. Albans Sch., 134 A.3d 789, 808–09 & n.13 (D.C. 2016) (recognizing "fraudulent misrepresentation" claim as distinctive type of fraud). He

alleges that the "statement was false," "contradicted the Policy's express provisions," and "was made knowingly or recklessly in the course of claim intake and at a time when [Protective] possessed superior knowledge of coverage unavailable to Plaintiff." Am. Compl., ¶¶ 122–23. He says that he "reasonably relied on the misrepresentation" and "suffered damages as a direct and proximate result." Id., ¶¶ 124–25.

a. Choice of Law

As with bad faith, the D.C. Court of Appeals in Choharis dismissed several tort claims sounding in fraud and misrepresentation because they arose from a contractual relationship. See 961 A.2d at 1089. The rules and rationales that it articulated thus apply equally here for purposes of choice of law.

Plaintiff cites no Indiana authority on the elements of fraudulent misrepresentation, focusing instead on defending the particularity of his pleading even though that is not Protective's main line of attack. Assuming, however, that a genuine conflict of laws exists as to this purported tort, the same choice-of-law analysis as before would govern. Specific to this count, the two jurisdictions presumably have comparable interests in preventing insurer fraud, whether for the sake of protecting residents or holding corporate citizens in check, while the District also maintains its interest in holding insurers accountable to their contracts (and only their contracts). McCall himself points to no differences in governmental interests or facts that might alter the four-factor Restatement analysis. For the reasons stated earlier, then, D.C. law also governs his fraudulent-misrepresentation claim.

b. Application of D.C. Law

Choharis again dooms Plaintiff's count. His arguments for fraudulent misrepresentation rest on a subset of the facts underlying his bad-faith claim — specifically, his allegations that

Protective knowingly or recklessly concealed and misrepresented his coverage. Compare Am. Compl., ¶¶ 121–23, with id., ¶¶ 115–16. The Court has already explained why the harms related to insurer bad faith were directly related to Protective's contractual obligations and are potentially compensable under the contract. The same is true here: Protective's alleged concealment and misrepresentation of Plaintiff's coverage is clearly not "separable from the terms of the contract" since the contract is what defines and creates the coverage itself. Choharis, 961 A.2d at 1089. And nowhere does McCall allege that Protective committed fraud "in matters leading to the procurement of the contract." Id. at 1088 n.11. Unlike the duty not to assault or slander someone, id. at 1088, the "duty . . . to be accurate" in assessing whether a claim is covered "flow[s] basically from the contractual relationship." Id. at 1089–90. False assertions about a valid claim, in turn, "directly relate[ ] to an obligation arising under the contract." Id. at 1090. This count thus does not survive.

*3. Count IV: Negligence Against IHA and SCI*

Switching Defendants in Count IV, Plaintiff alleges negligence against IHA and SCI on the theory that they "undertook direct communications and claim intake responsibilities independent of [Protective's] contractual duty to pay benefits." Am. Compl., ¶ 132. He asserts that those undertakings "created independent duties of reasonable care" that IHA and SCI then breached, causing him "personal injury and physical harm." Id., ¶¶ 132–33.

a. Choice of Law

Yet again, Choharis assists in framing the governmental-interests analysis, even though it did not itself involve a plain-vanilla negligence claim like McCall's. See 961 A.2d at 1088–89 (broadly declining to recognize any tort arising from contractual relationship).

The reasons that D.C. law governs Plaintiff's other tort claims apply again here. If it turns out that McCall's negligence count fundamentally arises from his contractual relationship with IHA and SCI, then the governmental interests at stake mirror those already described. If, on the other hand, the count "exist[s] in its own right," Choharis, 961 A.2d at 1089, then the governmental interests balance out, too: both jurisdictions have strong interests in preventing insurer negligence, whether to protect residents or to regulate companies contracting in the state. The four-factor Restatement test, however, tips the scales further toward the District than before since neither IHA nor SCI is incorporated or has a principal place of business in Indiana. See Removal Notice, ¶ 6 (stating that "SCI is incorporated in and has a principal place of business in Delaware" and that "IHA is a non-profit corporation incorporated and with principal place of business in Tennessee"); see also ECF No. 12 (Notice of Members), ¶¶ 1–6 (listing SCI's members, none of which is incorporated in or a resident of Indiana). The Court will thus apply D.C. law to McCall's negligence claim.

b. Application of D.C. Law

Under Choharis, the key question is whether McCall's negligence claim arises from his contractual relationship with IHA and SCI. But the contours of that relationship are blurry at best. The only contract provided to the Court and cited by the parties is the insurance policy signed by Protective's "[a]uthorized [r]epresentative." Policy at ECF pp. 30, 32, 35–37. That document names IHA as the plan "Sponsor" and SCI (somewhat opaquely) as the "Specified Entity," id. at ECF pp. 1–3; it makes no other mention of them, and no party has taken a position on whether Protective's insurance policy binds them. Plaintiff, meanwhile, has not even acknowledged the existence of separate contracts with IHA and SCI. See, e.g., Am. Compl., ¶¶ 127–28 (stating that IHA and SCI "owed Plaintiff duties independent of [Protective's]

contractual obligations" arising from "their voluntary undertaking of enrollment, premium collection, policy administration, and notice of loss functions," as well as their "control over claim intake," their "possession and maintenance of coverage records," and their "superior access to coverage information unavailable to Plaintiff").

The two Defendants nonetheless maintain that their conduct is "governed solely by the contracts entered by Plaintiff with SCI and IHA" and that those contracts do not require them to "participate, assist, or process an insurance claim." IHA/SCI MTD at 8. But that only raises further questions. Where are those contracts? And if they do not dictate claim-handling duties, what do they require?

Such uncertainty leaves the Court little choice but to allow Plaintiff's negligence count to proceed. Assuming that (1) IHA and SCI played key roles in claim administration and oversight, as Plaintiff alleges, see Am. Compl., ¶¶ 45–49, 101–03, yet (2) they had no contractual claim-handling obligations, as they acknowledge (to Plaintiff's benefit under Choharis), see IHA/SCI MTD at 8, the companies might well owe duties outside the contract. See Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 794 (D.C. 2011) ("[T]he scope of the defendant's undertaking determines the scope of its duty . . . .") (cleaned up). And that might mean the rule of Choharis does not bar Plaintiff's negligence claims. See Choharis, 961 A.2d at 1089 ("[A] cause of action that could be considered a tort independent of contract performance is a viable claim, even in the insurance context."). Without more, it is plausible — albeit still unlikely — that the negligence at issue would "stand as a tort even if" the relevant contractual relationships "did not exist." Id.

IHA and SCI's remaining argument is that McCall has not plausibly alleged causation because his damages "arise out of" Protective's "denial of his claim" over the phone on

December 3, 2021, "not the failure to transmit or 'administer' his claim by SCI and IHA." IHA/SCI MTD at 10. Proximate cause, a requirement for negligence, has two components: "'cause-in-fact' and a 'policy element[,]' which limits a defendant's liability when the chain of events leading to the plaintiff's injury is unforeseeable or 'highly extraordinary' in retrospect." Majeska v. District of Columbia, 812 A.2d 948, 950 (D.C. 2002) (citation omitted). Questions of proximate cause are normally fact laden: they "pass from the realm of fact to one of law" only in "exceptional cases." Id. (citation omitted).

Plaintiff plausibly alleges causation in maintaining that IHA's and SCI's omissions led to harmful delays in his medical care. True, he says the same about Protective's misrepresentation, which arguably played a more significant causal role. But it could still be the case that IHA's and SCI's alleged negligence was "of itself . . . sufficient to bring about" the harms, even if it was not a but-for cause. See Restatement (Second) of Torts § 432(2) (Am. L. Inst. 1965). And at this stage, the Court is not prepared to infer that Protective's conduct completely neutralized any negligence by IHA and SCI, particularly in light of Plaintiff's allegations that IHA and SCI had continuing oversight and claim-handling duties. See Am. Compl., ¶¶ 17, 101–03. McCall's negligence claims can therefore proceed.

*4. Count V: Declaratory Relief*

Plaintiff last frames his request for declaratory relief as a freestanding count. Id., ¶¶ 134–36. He asks for a declaration that his insurance policy covers his accident and his resulting expenses and that "Defendants are obligated to pay benefits." Id., ¶ 135. He also seeks an "order compelling payment of all covered benefits due," which the Court construes as a request for enforcement of the contract terms rather than for declaratory relief. Id.

a. Choice of Law

Because Plaintiff offers no authorities to guide the Court's analysis, see Am. Compl., ¶¶ 134–36; Opp. at 15, it will assume that whatever law might govern this count is procedural for vertical choice-of-law purposes and will accordingly apply federal law. See Erie, 304 U.S. at 78; cf. Medtronic, Inc. v. Mirowski Fam. Ventures, LLC, 571 U.S. 191, 199 (2014) ("We have long considered the operation of the [federal] Declaratory Judgment Act to be only procedural.") (quotation marks and citation omitted); Coccaro v. Geico Gen. Ins. Co., 648 F. App'x 876, 880–81 (11th Cir. 2016) (deeming state law governing declaratory judgments "procedural" and thus construing count as arising under federal Declaratory Judgment Act).

b. Application of Federal Law

Protective's main argument for dismissal is that no actual controversy exists because the rest of the suit "is time barred and does not state claims upon which relief may be granted" — an argument now rendered obsolete. See Protective MTD at 11; see also Protective Reply at 8; see generally IHA/SCI MTD (not addressing count at all). The better argument is that declaratory relief "is not cognizable as a separate cause of action," Intelsat USA Sales Corp. v. Juch-Tech, Inc., 935 F. Supp. 2d 101, 120 (D.D.C. 2013), and, in any event, it would "add nothing" to this suit given that the breach-of-contract claim remains in play. Butler v. Enter. Integration Corp., 459 F. Supp. 3d 78, 108 (D.D.C. 2020) (citation omitted). The Court will therefore dismiss the count for declaratory relief.

* * *

With the main issues resolved, the Court turns to a handful of miscellaneous requests.

First, Protective asks it to strike Plaintiff's demand for punitive damages, which accompanies his bad-faith claim. See Protective MTD at 11–12 (invoking Fed. R. Civ. Proc. 12(f)); Am. Compl., ¶ 119. Given that such count does not survive, nor can this demand.

Second, Protective asks the Court to strike "Plaintiff's attempt to identify Protective as any other entity other than its correct legal name." Protective MTD at 11. It contends that McCall — who frequently refers to the company as "Progressive" in his Amended Complaint — "has no grounds to assert claims as to 'Progressive,' 'Progressive Fleet & Specialty Programs, Inc.,' or 'and/or Affiliated Entity' because these companies do not exist." Id. at 12. Plaintiff responds that he encountered such names during the "claims process" and that he is entitled to plead facts accordingly. See Opp. at 16. The Court will deny Protective's request, as the company has not identified any prejudice it will suffer if the pleadings stay intact, and Plaintiff already introduces the company in the Amended Complaint as "Defendant Protective Insurance Company." Am. Compl., ¶ 36.

Third and last, McCall has filed a Motion for Leave to File a Surreply responding to Defendants' Replies. See generally ECF No. 22 (Mot. for Leave to File Surreply). The standard for granting leave is "whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C. 2001); see also Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003). McCall argues that Protective's newfound reliance on certain allegations in the Amended Complaint justifies granting leave. See Mot. for Leave to File Surreply at 2; Protective Reply at 4–5; Am. Compl., ¶ 84 (stating that "Defendants were on actual and constructive notice of reasonably foreseeable litigation no later than December 3, 2021," and that Plaintiff "subsequently served preservation demands on [Protective] and SCI" at an unspecified

time). As those rather ambiguous allegations did not factor into the Court's analysis in this Opinion, any need to respond is now moot. Plaintiff's myriad other arguments focus on how Defendants have allegedly "mischaracterized [his] position" — an objection that "does not involve a new matter." Lewis, 154 F. Supp. 2d at 61; see Mot. for Leave to File Surreply at 2–5. He also objects to Defendants' elaboration on preexisting legal arguments and their reliance on additional cases, which similarly does not warrant granting leave. See Mot. for Leave to File Surreply at 2–4. The Court will therefore deny Plaintiff's Motion.

## IV. Conclusion

For the foregoing reasons, the Court will grant Protective's Motion to Dismiss Counts II (insurer bad faith), III (fraudulent misrepresentation), and V (declaratory relief), but it will deny the Motion with respect to Count I (breach of contract). It will also deny IHA and SCI's Motion to Dismiss Count IV (negligence). Finally, the Court will deny Protective's two requests to strike material from Plaintiff's pleadings and will likewise deny his Motion for Leave to File a Surreply. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 2, 2026